UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                 Case No. 15-cv-10040

v

JAMES C. CORDES, et al.,                     Honorable Thomas L. Ludington

        Defendants,
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO AMEND CASE MANAGEMENT AND SCHEDULING ORDER, DENYING CORDES'S MOTION TO QUASH, GRANTING IN PART AND DENYING IN PART MS. KALMAR'S MOTION TO QUASH, AND AWARDING REASONABLE EXPENSES UNDER RULE 37(a)(5)

Debtor James C. Cordes is self-employed as an information systems consultant that does business through his wholly owned limited liability company, Crossing Consulting Group, LLC ("CCG"). CCG's main client is the Dow Chemical Company. On May 1, 2013, Debtor Cordes filed a petition under Chapter 7 of the Bankruptcy Code. On January 8, 2014, the Internal Revenue Service filed a proof of claim totaling $4,357,966.33— Cordes's alleged tax liability for tax years 1994-2008, 2010, and 2012. On August 6, 2013, Cordes received a discharge from his Chapter 7 bankruptcy. The United States then attempted to collect some of Coredes's past taxes by levying against funds held by Dow Chemical and Comerica Bank that were owed to CCG. In response Cordes initiated an adversary proceeding in bankruptcy court, seeking the following relief: (1) a determination of the dischargeability of his tax liability, (2) a determination of the secured status of the IRS lien, (3) relief for an alleged violation of the bankruptcy stay; and (4) a declaratory judgment that CCG is not the alter ego of Cordes. Then, on September 21, 2015 Cordes sought Chapter 13 bankruptcy protection.

Cordes's bankruptcy proceedings spawned three separate filings in the Eastern District of Michigan District Court. *See United States of America v. James C. Cordes et al.*, 15-cv-10040 (E.D. Mich. Jan 7, 2015); *Crossing Consulting Group v. United States of America*, 15-cv-13604 (E.D. Mich. 2015), and *United States of America v. James C. Cordes et al.*, 15-cv-14101 (E.D. Mich. Nov. 23, 2015). On March 3, 2016, all three matters were consolidated on the lowest docket number, 15-cv-10040. ECF No. 40.

Just prior to the consolidation, on March 1, 2016 both Cordes and his wife, Melanie Kalmar, filed motions to quash the subpoenas issued to Melanie Kalmar. ECF Nos. 37, 39. Then, just after consolidation, on March 9, 2016 the United States filed a motion to amend and correct the consolidated scheduling order. ECF No. 44. All three motions are now fully briefed and ready for decision.

**I.**

The United States' motion to amend and correct the scheduling order will be addressed first.

**A.**

In its motion, the United States first notes that, while the scheduling order provides deadlines for Plaintiff's expert disclosures and Defendant's expert disclosures, the scheduling order does not explain which party is designated as Plaintiff and which party is designated as Defendant. The United States therefore requests an amendment to the scheduling order, and seeks to be designated the Defendant in this action.

The United States' request will be granted in part and denied in part. To the extent that the United States seeks clarification, its request will be granted. To the extent it seeks to be designated Defendant, its request will be denied. The United States, the party that sought

removal to this Court, will be designated Plaintiff, and Cordes and CCG will be designated Defendants. United States will thus be held to all Plaintiff deadlines established by the scheduling order, and Cordes and CCG will be held to all Defendant deadlines.

**B.**

Plaintiff United States also seeks an amendment to the scheduling order to prevent Cordes and CCG from filing expert disclosures. Plaintiff United States argues that because Cordes and CCG did not file expert reports or disclosures in bankruptcy court prior to the withdrawal of the reference, they should not be allowed to file such reports and disclosure in this case.

This argument ignores the fact that this is a separate proceeding from the Bankruptcy Court proceeding. Plaintiff United States was the party that sought a withdrawal of the reference to the Bankruptcy Court, and sought to invoke this Court's jurisdiction. Having obtained the relief it sought, the United States is subject to both the benefits and inconveniences of this Court's jurisdiction. Defendants Cordes and CCG will have a full opportunity to prove their cases in this Court, which includes the opportunity to submit expert disclosures.

The United States' argument that Defendants' should be required to file their expert disclosures first because the United States will only need to call rebuttal experts is not persuasive. If, after reviewing Defendants' expert disclosures, the United States determines that it has a need for rebuttal expert disclosures, then the United States can either stipulate to or file a motion for leave to file such disclosures.

**II.**

Also before the Court are two motions to quash the subpoenas issued to Cordes's wife, Melanie Kalmar, filed by Cordes and Ms. Kalmar. On February 24, 2016, Plaintiff United States

caused to be issued two subpoenas to Ms. Kalmar. First, the United States caused to be issued a subpoena requiring Ms. Kalmar to testify at a March 17, 2016 deposition. Second, the United States caused to be issued a subpoena *duces tecum*, requiring Ms. Kalmar to produce, by March 9, 2016, a variety of financial documents. Specifically the United States sought the following:

1. All documents related to her purchases, sales, or refinances of real property since her marriage to Cordes;
2. All documents related to any loans issued for such real property;
3. All documents related to rent payments received by Ms. Kalmar from Cordes;
4. All documents related to transfers and/or gifts of property valued at more than $500 from Cordes to Ms. Kalmar since their marriage;
5. All federal income tax returns filed by Ms. Kalmar since her marriage to Cordes;
6. All documents relating to the Melanie Kalmar Trust, an entity that appears to own Cordes's primary residence;
7. All monthly account statements for any bank accounts for which Ms. Kalmar had signatory authority since the date of her marriage to Cordes;
8. Copies of checks written from such accounts if the payee is Cordes, CCG, Cordes Consulting Group LLC, Crossing Airways LLC, Melanie Kalmar, Melanie Kalmar Trust, or "cash";
9. Copies of deposited items from such accounts for amounts over $1,000;
10. Records of transfers from such accounts that are not reflected in the account statements;
11. Copies of cashier's checks, bank checks, and money orders issued from such accounts; and
12. All bank signature cards or corporate resolutions for such accounts.

Both Cordes and Mrs. Kalmar argue that the subpoenas issued to Ms. Kalmar should be quashed under both the spousal testimonial privilege and the spousal confidential communication privilege. They also argue that the subpoenas should be quashed as overbroad and unduly burdensome.

In this federal question case involving questions of federal tax liability, federal law governs claims of privilege. Fed. Rule Evid. 501; *See also Hancock v. Dodson,* 958 F.2d 1367, 1373 (6th Cir. 1992) ("[T]he existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege."). The decision to quash a subpoena is within the

sound discretion of the district court. *Thomas v. City of Cleveland*, 57 F. App'x 652, 654 (6th Cir.2003).

### A.

In his motion to quash, Cordes first argues that the subpoenas issued to Ms. Kalmar should be quashed under a theory of spousal testimonial privilege. In *Trammel v. United States*, 445 U.S. 40, 53 (1980) the United States Supreme Court recognized the spousal testimonial privilege. There, the Court held that a witness spouse may not be compelled to testify against an accused spouse in a criminal proceeding. *Id*. The Court held that the privilege against testifying may only be asserted by the testifying spouse. *Id*. Furthermore, the privilege against testifying applies only in criminal proceedings, not civil matters. *See United States v. Gray*, 194 F.3d 1314 (6th Cir. 1999).

Cordes's claim of spousal testimonial privilege is without merit for two reasons; first, because the testimonial privilege belongs only to the testifying spouse, and second because the testimonial privilege is inapplicable in civil cases. Cordes's motion to quash on this ground will therefore be denied.

Ms. Kalmar raises nearly identical arguments in her motion to quash. To the extent she argues that the subpoenas should be quashed on grounds of testimonial spousal privilege, her motion will be denied because that privilege is inapplicable in civil cases. *See Gray*, 194 F.3d at 1314.

### B.

Cordes and Ms. Kalmar next argue that the subpoenas issued to Mrs. Kalmar should be quashed under a theory of spousal confidential communication privilege. The spousal confidential communication privilege applies to just that: spousal confidential communications.

*United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993). It applies only to "utterances or expressions intended by one spouse to convey a message to the other" in confidence. *Id*. (internal citation and quotation omitted). It does not apply to events a spouse observed or in which she participated (such as financial transactions). To assert the confidential communications privilege, a person must show (i) that the communications were made in confidence (ii) that the communications were made between husband and wife (iii) and that the couple's marriage was legally recognized at the time the communications were made. *Porter*, 986 F.3d at 1018. The privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominate principle of utilizing all rational means for ascertaining truth." *Id*. at 1019 (quoting *Trammel*, 445 U.S. at 50).

For this reason, neither Cordes nor Ms. Kalmar may assert a blanket spousal communication privilege that would justify quashing the subpoenas. Instead, whether the privilege applies must be determined on a question-by-question, and document-by-document basis. *See* Rule 45(e)(2); *Green v. Cosby*, - F. Supp. 3d – (D. Mass. 2015) (holding that an invocation of the spousal communication rule does not warrant quashing a subpoena). *See also In re Morganroth,* 718 F.2d 161, 164-65 (6th Cir. 1983) (holding that whether the Fifth Amendment privilege against self-incrimination applies should be determined on a question-by-question basis). The spousal communication privilege is therefore not grounds for quashing the subpoenas in whole.

## C.

Finally, Cordes and Ms. Kalmar argue that the subpoena *duces tecum* should be quashed or modified pursuant to Rule 45(d)(3), claiming that it fails to allow her a reasonable time to

respond, requires the disclosure of privileged matters, and would subject her to undue burden since it was issued to annoy, embarrass, oppress, or cause undue burden or expense. Cordes and Ms. Kalmar further argue that the scope of the subpoena is overbroad and designed to seek irrelevant evidence.

Rule 26(b) defines the scope of discovery for a subpoena issued pursuant to Rule 45. *See Sys. Prod. and Solutions, Inc., v. Scramlin,* 2014 WL 3894385, at *9 (E.D.Mich. Aug.8, 2014). Federal Rule of Civil Procedure 26(b)(1) as effective on December 1, 2015 provides the following:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id.* Ordinarily, a party has no standing to oppose a subpoena issued to a non-party unless the party can demonstrate a claim of privilege or personal right in the documents sought. *Donahoo v. Ohio Dept. of Youth Servs.,* 211 F.R.D. 303, 306 (N.D. Ohio 2002); *Mann v. Univ. of Cincinnati*, 1997 WL 280188, *4 (6th Cir.1997) (per curiam).

Cordes does not have standing to raise an undue burden argument, as any undue burden would rest only with the party from which the information is sought. *See Malibu Media, LLC v. John does 1-6,* 291 F.R.D. 191, 196 (N.D. Ill. 2013) (citing cases). Ms. Kalmar's undue burden objection to the subpoena is without merit because all of the information sought from her is relevant to the United States' claim that Cordes willfully evaded collection of taxes from 1994 to 2008. The discovery sought from Ms. Kalmar is relevant, proportional, and likely to assist in

resolving important issues in this case, such as Cordes's tax liability, the existence of any fraudulent transfers, and whether the alter-ego theory of liability is applicable. Any burden caused by the third-party subpoena is outweighed by the United States' substantial need for such information and the importance of resolving these issues.

Cordes and Ms. Kalmar also argue that the subpoena impermissibly seeks privileged information under Rule 45(d)(3)(A)(iv) in that the United States seeks information related to transactions between Ms. Kalmar and her husband. To the extent this argument is based on Cordes's privacy interest, he does have standing to challenge the subpoena issued to his wife. As discussed above, however, such a privilege only applies to confidential communications, and Ms. Kalmar and Cordes will need to object to such documents on a question-by-question, or document-by-document basis under Rule 45(e)(2).

Finally, Cordes and Ms. Kalmar argue that the subpoena *duces tecum* fails to allow a reasonable time to comply under Rule 45(d)(3)(A)(i). Cordes does not have standing to raise this issue, and his motion will be denied. Ms. Kalmar's argument, however, has merit. The subpoena originally gave Ms. Kalmar only two weeks to comply with broad requests for financial documents generated over the course of 13 years. The subpoenas deadline will therefore be modified to provide a reasonable time for compliance.

**III.**

Pursuant to Rule 26(c)(3) and Rule 37(a)(5), Plaintiff United States seeks an award of the expenses it incurred in opposing Cordes's motion. The United States contends that Cordes's motion was not substantially justified and was filed in bad faith.

Under Rule 26(c)(3), a party that moves for a protective order may be subject to expenses under Rule 37(a)(5). Rule 37(a)(5) in turn provides that the Court "*must*, after giving an

opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." *Id*. (emphasis added). However, the Court must not award expenses "if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id*. The United States Supreme Court has defined "substantially justified" to mean "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). "Substantial justification" entails a "reasonable basis in both law and fact," such that "there is a genuine dispute ... or if reasonable people could differ [as to the appropriateness of the contested action]." *Id*. (internal quotation marks omitted).

Cordes had an opportunity to be heard in his reply brief, ECF No. 53. Based on the analysis above, Cordes's motion to quash did not have a reasonable basis in law or fact. Cordes did not have standing to pursue most of the issues raised in his motion. The only issue he had standing to raise – the spousal communication privilege – does not warrant quashing either subpoena issued to Ms. Kalmar, and Cordes did not identify any specific testimony or documents subject to the privilege. Accordingly, under Rule 37(a)(5) Cordes's counsel must pay the United States its reasonable attorneys' fees incurred in connection with addressing Cordes's motion.

**IV.**

Accordingly, it is **ORDERED** that the United States motion to amend, ECF No. 44, is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the United States is **DESIGNATED** Plaintiff in this matter, and Cordes and CCG are **DESIGNATED** Defendants in this matter.

It is further **ORDERED** Defendant Cordes's motion to quash, ECF No. 39, is **DENIED**.

It is further **ORDERED** that Ms. Kalmar's motion to quash, ECF No. 37, is **GRANTED IN PART**.

It is further **ORDERED** that the deadline for Ms. Kalmar to comply with the subpoena *duces tecum* issued to her by the United States is **MODIFIED** to **April 22, 2016.**

It is further **ORDERED** that Cordes's counsel is **DIRECTED** to pay the United States reasonable fees under Rule 37(a)(5). The United States is **DIRECTED** to submit to the Court a bill of costs incurred in preparing its response to Cordes's motion to quash, ECF No. 39, within 10 days, at which time he Court will assess the costs for which Cordes is liable.

                                                                        s/Thomas L. Ludington  
                                                                       THOMAS L. LUDINGTON  
                                                                       United States District Judge

Dated: March 23, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 23, 2016.

                                       s/Michael A. Sian  
                                       MICHAEL A. SIAN, Case Manager